**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Protect Lake Pleasant, LLC, an Arizona limited liability company, et al., <br><br> Plaintiff, <br><br> vs. <br><br> Michael Connor, in his official capacity as Commissioner, United States Bureau of Reclamation, et al., <br><br> Defendants, <br><br> and <br><br> Lake Pleasant Marina Partners, LLC, an Arizona limited liability company, <br><br> Intervenor-Defendant. | No. CV 07-0454-PHX-RCB <br><br> **ORDER** |

Before the court is intervenor-defendant Lake Pleasant Marina Partners' (LPMP) Motion for Non-Taxable Expenses and Attorneys' Fees (Doc. 180), which Plaintiffs oppose (Doc. 196).

The court will deny LPMP's motion.

**I.   Background**

The court is familiar with the factual and procedural history of this case, the details of which need not be repeated here. To summarize, in February 2007, individual Plaintiffs David Maule-Ffinch and Michael Viscuis, and Protect Lake Pleasant, LLC, and Pensus Group, LLC, both limited liability companies, initiated this action against the United States

Bureau of Reclamation (BOR), BOR Commissioner Michael Connor, and Secretary of the Interior Ken Salazar. Compl. (Doc. 1).[1] On March 16, 2007, Plaintiffs filed their First Amended Complaint (FAC) (Doc. 4), which set out four counts for relief, all arising under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. In Count I, Plaintiffs alleged that by authorizing Maricopa County to proceed with the development and construction of the proposed Scorpion Bay Marina & Yacht Club at Lake Pleasant Regional Park, the BOR violated the Federal Property and Administrative Services Act of 1949 (FPASA), 40 U.S.C. §§ 101 *et seq*. In Count II, Plaintiffs alleged that BOR violated the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 *et seq.*, when it issued a Final Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) with respect to the Scorpion Bay project. Count III alleged that BOR failed to quantify all emission sources in violation of the Clean Air Act (CAA), 42 U.S.C. §§ 7401 *et seq*. And in Count IV, Plaintiffs claimed a violation of the NEPA provision pertaining to public comment and involvement in the EA process. FAC (Doc. 4).

On March 28, 2007, LPMP, LLC—the limited liability company that was ultimately awarded the contract to operate the Scorpion Bay Marina & Yacht Club—moved to intervene. LPMP's Mot. (Doc. 13). The court granted the motion, and LPMP was added as an intervenor-defendant. Order (Doc. 24).

During the proceedings, Plaintiffs moved for a preliminary injunction (Doc. 12), which the court denied. Protect Lake Pleasant v. Johnson, 2007 WL 1486869 (D. Ariz. May 21, 2007) (Doc. 40) ("Protect Lake Pleasant I").[2] Plaintiff appealed that denial (Doc. 43) and sought a stay in this court pending appeal (Doc. 47). The court denied the stay. Protect Lake Pleasant v. Johnson, 2007 WL 2177327 (D. Ariz. July 27, 2007) (Doc. 64) ("Protect Lake

---

[1] Hereinafter, the reference to "BOR" shall be read as including individual defendants Connor and Salazar.

[2] Throughout this Order, the court will reference the previous Orders as "Protect Lake Pleasant I," "Protect Lake Pleasant II," etc. However, when citing to specific pages within those Orders, for consistency with the citations to motions and other filings, the court will refer to the "Document" page numbers rather than the Westlaw cite page numbers.

- 2 -

Pleasant II"). And the United States Court of Appeals for the Ninth Circuit affirmed denial of the preliminary injunction. Protect Lake Pleasant v. Johnson, 252 Fed. Appx. 856 (9th Cir. 2007) (Doc. 85) ("Protect Lake Pleasant III"). In March 2009, the court granted summary judgment in favor of BOR and LPMP on Count I. Protect Lake Pleasant v. Johnson, 609 F. Supp. 2d 895 (D. Ariz. Mar. 23, 2009) (Doc. 142) ("Protect Lake Pleasant V"). On July 30, 2010, the court granted summary judgment in favor of BOR and LPMP on the remaining three counts. Summ. J. Order (Doc. 176).

    LPMP now moves for non-taxable expenses and attorneys' fees in the amount of $500,000. LPMP's Mot. (Doc. 180). In its supporting memorandum, LPMP argues that it is entitled to attorneys' fees as the prevailing party and as an intervenor-defendant because it substantially contributed to the case. LPMP's Mem. (Doc. 190) at 2-5. LPMP emphasizes that every substantive motion Plaintiffs filed that was related to LPMP was unsuccessful, while every substantive motion LPMP filed was granted in whole or in part or deemed moot for other reasons. Id. at 2-3. LPMP sets forth three legal bases for entitlement to attorneys' fees: (1) pursuant to the bad-faith exception to the American Rule in light of Plaintiffs' obdurate conduct in litigating this action; (2) under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b), which provides for attorneys' fees to the prevailing party in any action to which the United States is a party; and (3) as the prevailing party in an environmental action and as provided for under § 7604(d) of the CAA. Id. at 5-16.[3]

    Plaintiffs oppose LPMP's motion; they contend that LPMP did not play a significant role in the defense of this action and is therefore not entitled to an award of fees. Pls.' Resp. (Doc. 196) at 2-3. Plaintiffs argue that because there is nothing to support a finding of bad faith, fees are not available under the bad-faith exception. Id. at 8-10. Alternatively, they argue that even if LPMP were entitled to fees, the amount connected to any alleged bad faith

---

[3] In its motion, LPMP lists Arizona Revised Statute § 12-341.01 as another authority that entitles it to an award of attorneys' fees. LPMP's Mot. (Doc. 180) at 2. But in its supporting memorandum, LPMP does not cite to § 12-341.01 or present any argument for fees pursuant to this state statute. See LPMP's Mem. (Doc. 190). To the extent that LPMP requests non-taxable expenses and attorneys' fees under § 12-341.01, that request is denied.

- 3 -

1    would be no more that $10,000. Id. Plaintiffs posit that the EAJA does not authorize
2    attorneys' fees for a non-governmental party against another non-governmental party. Id.
3    at 6-7. Lastly, Plaintiffs assert that fees are not available under the CAA because the court
4    already found that they could not have brought their claims under the specific provision
5    within the Act that triggers an allowance for attorneys' fees. Id. at 5.

6    **II.    Bad Faith Exception to American Rule**

7            **A.    Legal Standard**

8    Under the traditional American Rule, each litigant is responsible for paying its own
9    attorneys' fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 247
10   (1975). But an exception exists that allows courts to award reasonable attorneys' fees and
11   costs to the prevailing party when the losing party has "acted in bad faith, vexatiously,
12   wantonly, or for oppressive reasons." Id. at 258-59; see Chambers v. NASCO, Inc., 501 U.S.
13   32, 45-46 (1991). Such an award "is punitive and the penalty can be imposed only in
14   exceptional cases and for dominating reasons of justice." Dogherra v. Safeway Stores, Inc.,
15   679 F.2d 1293, 1298 (9th Cir. 1982) (quoting United States v. Standard Oil Co., 603 F.2d
16   100, 103 (9th Cir. 1979)). Whether to award fees under this standard is within the district
17   court's discretion. Dogherra, 679 F.2d at 1298.

18   To award fees under the bad-faith exception, the district court must make a specific
19   finding of bad faith "or conduct tantamount to bad faith." Gomez v. Vernon, 255 F.3d 1118,
20   1134 (9th Cir. 2001) (citation omitted); see Primus Auto. Fin. Servs., Inc. v. Batarse, 115
21   F.3d 644, 649 (9th Cir. 1997) (district court must make specific finding of bad faith). This
22   is a high threshold. See Primus, 115 F.3d at 649. Negligent or inadvertent conduct does not
23   constitute bad faith, nor does mere recklessness. Fink v. Gomez, 239 F.3d 989, 992-94 (9th
24   Cir. 2001); see F.D.I.C. v. Schuchmann, 319 F.3d 1247, 1252 (10th Cir. 2003) ("bad faith
25   requires more than a mere showing of a weak or legally inadequate case, and the exception
26   is not invoked by findings of negligence, frivolity, or improvidence") (quotation omitted).
27   Rather, the bad-faith exception is reserved for "the rare and exceptional case" where
28   litigation is reckless *and* frivolous, harassing, or for an improper purpose. Primus, 115 F.3d

1  at 649; Fink, 239 F.3d at 994 (sanctions available for "recklessness when combined with an
2  additional factor such as frivolousness, harassment, or an improper purpose").

3  **B.     Parties' Contentions**

4  LPMP asserts that it is entitled to an award of attorneys' fees under the bad-faith
5  exception due to Plaintiffs' obdurate actions in filing multiple motions on matters ruled upon
6  by the court. LPMP's Mem. (Doc. 190) at 7-8. LPMP acknowledges that Plaintiffs' claims
7  may not have been frivolous when they were initially brought; however, it asserts that
8  Plaintiffs acted in bad faith when they continued to litigate this suit after their claims clearly
9  became frivolous. LPMP's Mem. (Doc. 190) at 12-14; LPMP's Reply (Doc. 197) at 6.

10  LPMP states that "several issues were repeatedly litigated numerous times and all
11  resulted in the same result." LPMP's Mem. (Doc. 190) at 13. LPMP points to the court's
12  final Summary Judgment Order, which stated that a comparison of Plaintiffs' summary
13  judgment arguments with prior decisions shows that Plaintiffs "repackage[d] versions of
14  NEPA issues which this court has previously decided." Id. (citing Doc. 176 at 11). LPMP
15  argues that Plaintiff's refusal to concede their NEPA claims despite the court's rulings, as
16  well as Ninth Circuit rulings, demonstrates frivolous and obdurate litigation to which LPMP
17  was forced to respond. LPMP's Mem. (Doc. 190) at 16.

18  LPMP also points to the court's observation that Plaintiffs repeatedly made the same
19  carrying-capacity argument, which had been "soundly rejected—three times by this court
20  . . . and once by the Ninth Circuit . . . ." Id. at 14 (citing Doc. 176 at 30). LPMP further
21  argues that Plaintiffs made repeated attempts to introduce evidence outside the administrative
22  record despite the court's previous ruling on the issue. LPMP's Mem. (Doc. 190) at 15.
23  LPMP contends that Plaintiffs' stubborn refusal to accept the court's rulings forced it to incur
24  legal expenses to respond to the same arguments over and over. Id. at 14.

25  In response, Plaintiffs assert that a finding a bad faith requires the court to determine
26  that they acted with an improper purpose, such as harassment or delay, and they submit that
27  the conduct cited by LPMP falls short of meeting that threshold. Pls.' Resp. (Doc. 196) at
28  8-9. Plaintiffs maintain that raising arguments at summary judgment that were previously

1 raised on a preliminary injunction application does not amount to bad faith, and they note
2 that the court specified in its final Summary Judgment Order that decisions on preliminary
3 injunctions are not binding on the merits. Plaintiffs therefore argue that re-raising those
4 arguments—especially in the absence of any ruling by this court or the Ninth Circuit that the
5 law-of-the-case doctrine would apply to their preliminary injunction rulings—does not rise
6 to obdurate conduct. Id. With respect to the two motions related to evidence outside of the
7 administrative record, Plaintiffs note that although the court denied the motions, it made no
8 finding that the motions were frivolous or filed in bad faith. Id. at 10.

9 Plaintiffs conclude by asserting that this is not an exceptional case and that nothing
10 in the record amounts to conduct that "clearly goes beyond the generally accepted vigor and
11 persistence commonly employed in our adversary system," which is required to support a
12 finding of bad faith or obdurate behavior. Id. at 8-9 (citing Tenants and Owners in
13 Opposition to Redevelopment v. U.S. Dep't of HUD, 406 F. Supp. 960, 964 (D.C. Cal.
14 1975)).

15 In its reply, LPMP states that Plaintiffs appear to limit the bad-faith question to
16 conduct connected to the final summary judgment briefing; however, LPMP maintains that
17 Plaintiffs' obdurate behavior occurred throughout the entire case as evidenced by their
18 duplicative motions and "stubborn repetitions" of the same arguments. LPMP's Reply (Doc.
19 197) at 6-7.

20 **C.   Analysis**

21 As stated, the court must make a specific finding of bad faith, which encompasses
22 litigation that is reckless and frivolous or reckless and harassing. Fink, 239 F.3d at 993-94.
23 A bad-faith finding may arise where a party commits fraud upon the court, delays or disrupts
24 litigation, or hampers enforcement of a court order. See Chambers, 501 U.S. at 46 (citations
25 omitted). For example, motions or appeals filed solely for the purpose of delay constitute
26 bad faith. See United States v. Blodgett, 709 F.2d 608, 610 (9th Cir. 1983). Bad faith also
27 exists where a party acts for an improper purpose, such as an attempt to influence or
28 manipulate proceedings in one case to gain an advantage in another case. Fink, 239 F.3d at

1 | 994.

2 | **1. Frivolous Claim**

3 | LPMP maintains that it is entitled to fees because Plaintiffs continued to litigate several issues even after they were clearly frivolous. LPMP's Mem. (Doc. 190) at 12-13. In support, LPMP cites to Galen v. County of Los Angeles, 477 F.3d 652, 666-67 (9th Cir. 2007), where the Ninth Circuit upheld attorneys' fees for the county defendant in light of the plaintiff's continued litigation of one claim after it became obvious post-discovery that the claim was frivolous. Id. at 13. But Galen is distinguishable from this action because there, the award of attorneys' fees was pursuant to 42 U.S.C. § 1988, which provides for attorneys' fees to a prevailing civil-rights defendant if the action is found to be "unreasonable, frivolous, meritless, *or* vexatious." Galen, 477 at 666 (citing Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994) (emphasis added)). This is a lower standard than that applied to determine bad faith. As stated, frivolity alone is insufficient to support a bad-faith finding to warrant the imposition of fees under the bad-faith exception to the American Rule. See Fink, 239 F.3d at 994.

LPMP also cites to Marbled Murrelet v. Babbitt, 182 F.3d 1091 (9th Cir. 1999), to support its claim that it is entitled to fees due to Plaintiff's continued litigation of a frivolous claim. LPMP's Mem. (Doc. 190) at 12-13. But Marbled Murrelet did not analyze fee awards under the bad-faith exception; rather, it pertained to the award of attorneys' fees pursuant to a fee provision in an environmental statute. 182 F.3d at 1094-95. The Ninth Circuit held that the civil rights standard set forth in Christiansburg v. EEOC, 434 U.S. 412 (1978), should be applied to attorneys' fees provisions in environmental statutes, such as the Endangered Species Act and the CAA. Id. at 1095. Christiansburg allows courts to award attorneys' fees to a prevailing defendant upon a finding that the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421. The Supreme Court distinguished this standard from the traditional bad-faith standard. Id. at 417, 419 (noting that a statutory provision authorizing attorneys' fees to the prevailing party would not be necessary if fees were permitted only where there was bad faith

1   because the common law exception to the American Rule already provides for fees to be
2   awarded against a party who proceeds in bad faith) (citing Newman v. Piggie Park Enter.,
3   Inc., 390 U.S. 400, 402 n. 4 (1968)).  Thus, like Galen, Marbled Murrelet pertains to the civil
4   rights standard for awarding fees and provides no support for fees under the bad-faith
5   exception to the American Rule because, again, frivolity alone does not amount to bad faith.

### 2. Litigation in State Court

7   LPMP argues that Plaintiffs proceeded to litigate their frivolous claims in an obdurate
8   manner because they repeatedly raised the same arguments and refused to accept court
9   rulings. LPMP's Mem. (Doc. 190) at 12-13.  First, LPMP describes Plaintiffs' unsuccessful
10  "crusade" to prevent the construction of a new marina.  LPMP asserts that Plaintiffs' legal
11  actions—beginning with the filing of a mandamus action in superior court to try to prevent
12  Maricopa County from contracting with LPMP, and Plaintiffs' appeals in that court after
13  their request was denied—have threatened LPMP's very existence.  Id. at 12.

14  The Ninth Circuit has advised that the bad-faith exception must be construed
15  narrowly, because an expansive application would "conflict with the rationale of the
16  American rule . . . ."  Ass'n of Flight Attendants AFL-CIO v. Horizon Air Indus., Inc., 976
17  F.2d 541, 550 (9th Cir. 1992).  As such, an award of attorneys' fees is not appropriate when
18  it is "based solely upon a finding of bad faith as an element of the cause of action presented
19  in the underlying suit."  Id.  Prelitigation conduct may, nonetheless, be relevant to an award
20  of fees for bad faith when considering the "'totality of the circumstances,' including conduct
21  'prelitigation and during trial.'"  Rodriguez v. United States, 542 F.3d 704, 712 (9th Cir.
22  2008) (internal citation omitted).

23  Plaintiffs' actions in state court are not part of the litigation in the present case, nor
24  does the state-court litigation represent conduct constituting an element of the cause of action
25  underlying the federal lawsuit.  That Plaintiffs were unsuccessful in state court does not
26  establish bad faith, and this court is not in a position to determine whether Plaintiffs litigated
27  their state-court claims in bad faith.  Accordingly, the court finds that Plaintiffs' prior
28  litigation in superior court does not provide a basis for awarding fees in this action.

### 3. Repeated Arguments to Support NEPA Claims

Next, LPMP contends that a bad-faith finding is warranted due to Plaintiffs' failure to concede their NEPA claims and their insistence on repeating the same arguments despite the court's previous rulings related to those arguments. LPMP's Mem. (Doc. 190) at 13, 16. LPMP cites to that portion of the court's final Order that granted summary judgment to BOR and LPMP after finding that "despite plaintiffs' stubborn insistence, the law of the case forecloses consideration of the following alleged NEPA violations . . . ." Id. at 13 (citing Doc. 176 at 39). LPMP also notes the court's statement that Plaintiffs had "repackage[d]" NEPA issues that had already been decided (Doc. 190 at 13), and that they engaged in "cherry picking data" (id. at 16).

A review of the Summary Judgment Order reflects the court's finding that "some of plaintiffs' current, 'additional' issues are, as LPMP declares, 'repackage[d] versions of NEPA issues . . . [,]" but that other issues were not, and, thus, not all of Plaintiffs' NEPA claims were barred. Summ. J. Order (Doc. 176) at 22-23.[4] With respect to one of those issues that was "repackaged"—whether BOR's reason for eliminating the expansion alternative was sufficient—the court specified that it had determined only that Plaintiffs had failed to meet their burden to demonstrate success on the merits at the preliminary-injunction stage but that there remained "the possibility that plaintiffs could prevail on such a claim later in this litigation." Id. at 38. Hence, the issue was not entirely foreclosed after the preliminary injunction ruling. Plaintiffs did not prevail on this issue at summary judgment, however, because they presented the same unsuccessful argument. Id. at 38-39. In granting summary judgment to BOR and LPMP, the court made no finding that Plaintiffs' argument was frivolous or in bad faith; it simply noted that "[r]enewal of a previously unsuccessful argument is not a sufficient reason for the court to deviate from its prior findings." Id. at 38.

---

[4]Those undecided issues included the alleged failure to prepare a supplemental environmental impact statement and challenges to the Final EA pertaining to (1) the watercraft usage rate, (2) the pump-out system, (3) elimination of the No Action Alternative, and (4) whether Alternative A was a meaningful alternative. See Summ. J. Order (Doc. 176) at 23-28, 33-34, 37, 51.

- 9 -

LPMP contends that Plaintiffs' repeated presentation of the same carrying-capacity argument also constitutes obdurate conduct. LPMP's Mem. (Doc. 190) at 14. Plaintiffs repeatedly argued that "BOR acted arbitrarily and capriciously by allowing an increase in the number of boats on the Lake without first determining the Lake's carrying capacity." Summ. J. Order (Doc. 176) at 29-30. LPMP quotes the final Summary Judgment Order's observation that "this is now the fifth time plaintiffs have made this argument. Each time, regardless of context, this argument has been soundly rejected—three times by this court . . . and once by the Ninth Circuit . . . ." LPMP's Mem. (Doc. 190) at 15 (citing Doc. 176 at 30). LPMP argues that Plaintiffs also repeated the same unsuccessful arguments supporting other claims in Count II concerning alleged (1) overestimation of usable surface area of the lake and underestimation of daily watercraft, (2) failure by BOR to adequately consider alternatives to the proposed marina, and (3) reliance on a future Water Recreation Opportunity Spectrum study. LPMP's Mem. (Doc. 190) at 14-15 (citing Doc. 97 at 23-26). LPMP asserts that these "obdurate tactics and [ ] frivolous repetition" by Plaintiffs justifies an award of attorneys' fees. LPMP's Mem. (Doc. 190) at 14, 12.

LPMP cites no authority, and the court finds none, holding that re-raising an argument that has already been rejected constitutes reckless and frivolous conduct or reckless and harassing conduct. While re-raising failed arguments is not a good strategy, it does not constitute bad faith. Plaintiffs' arguments pertained to claims that were still viable. Even assuming that those arguments became frivolous over the course of the litigation, that alone does not establish bad faith. See Fink, 239 F.3d at 994; see also Mendez v. County of San Bernadino, 540 F.3d 1109, 1132 (9th Cir. 2008) (raising arguments described as "'totally frivolous,' 'outrageous' and 'inexcusable,'" did not equate to conduct "synonymous with a finding of bad faith") (citing Primus, 115 F.3d at 649). There is no evidence, and LPMP does not allege, that Plaintiffs re-raised arguments "for the purpose of harassing" LPMP, to disrupt the litigation, or because they were "motivated by vindictiveness." See Fink, 239 F.3d at 994; Primus, 115 F.3d at 649. Nor does LPMP show that in presenting their arguments, Plaintiffs fabricated evidence, lied to or misled the court, or sought to delay the proceedings.

See Dollar Systs., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 175-76 (9th Cir. 1989) (losing party's attempt to fabricate a disclosure date revealed bad faith conduct justifying an award of attorneys' fees); Herrera v. Singh, 103 F. Supp. 2d 1244, 1256-57 (E.D. Wash. 2000) (sanctions awarded under the bad-faith exception where the defendant delayed and disrupted litigation after he allegedly suffered a heart attack, the timing of which was suspect, but submitted no medical evidence to justify his condition or his inability to travel to the United States from India for health reasons, even though he traveled to Canada during the relevant time frame). Without more, Plaintiffs' re-submission of failed arguments does not rise to bad faith.

### 4. Repeated Attempts to Introduce Evidence Outside the Record

LPMP contends that by repeatedly attempting to introduce evidence outside of the administrative record, Plaintiffs acted in bad faith because they "stubbornly ignor[ed] the Court's previous rulings." LPMP's Mem. (Doc. 190) at 15. This argument suggests both bad faith and disobedience of a court order, which, by itself, is an exception to the American Rule justifying an award of attorneys' fees. Chambers, 501 U.S. at 45 (the three categories of exceptions that allow a court to award attorneys fees are (1) when a party's litigation efforts directly benefit others (referred to as the "common fund exception"), (2) as a sanction for willful disobedience of a court order, or (3) when a party has acted in bad faith or for oppressive reasons) (citations omitted).

#### *a. Repeating Argument for Outside Evidence*

In November 2007, Plaintiffs filed a motion for extra-record discovery (Doc. 78), which was denied on May 6, 2008. Protect Lake Pleasant v. Johnson (Doc. 97) ("Protect Lake Pleasant IV"). LPMP asserts that, despite the court's ruling on this discovery motion, Plaintiffs tried again—unsuccessfully—to introduce the same extra-record evidence under the same rationale at summary judgment. LPMP's Mem. (Doc. 190) at 15.

Although the May 6, 2008 Order denying the motion for extra-record discovery stated that none of Plaintiffs' arguments were convincing, the court denied the motion without prejudice to renewing. See Protect Lake Pleasant IV (Doc. 97) at 22-23, 26, 30. Therefore,

- 11 -

1    the ruling did not expressly foreclose the extra-record-evidence issue. In addressing the issue
2    again in the final Summary Judgment Order, the court recognized that the arguments were
3    more fully developed than they were at the preliminary injunction stage. Summ. J. Order
4    (Doc. 176) at 10. The court therefore properly examined the expanded arguments but came
5    to the same conclusion; the extra-record evidence would not be considered. Id. at 7-11.

6    ### *b. Motion to Supplement*

7    LPMP's cites Plaintiffs' filing of a motion to supplement the administrative record as
8    one of the "most keen examples" of bad faith. LPMP's Mem. (Doc. 190) at 15. Plaintiffs
9    had filed their aforementioned motion seeking extra-record discovery (Doc. 78), which all
10   the parties briefed. But before the May 6, 2008 ruling was issued, Plaintiffs filed their
11   motion to supplement the record (Doc. 87), which, according to LPMP, "mooted everyone's
12   efforts" regarding the motion for discovery. LPMP's Mem. (Doc. 190) at 15.

13   The court notes that in its May 6, 2008 Order addressing the discovery motion, it
14   stated that the motion to supplement changed the complexion of the discovery motion and
15   that there was "potential interplay" between the two motions. Protect Lake Pleasant IV (Doc.
16   97) at 13. The court explained that the motion to supplement demonstrated that "evidently
17   plaintiffs have obtained through other means, such as FOIA requests, much of what they are
18   seeking through this discovery motion." Id. The motion for extra-record discovery was filed
19   on November 7, 2007 (Doc. 78), and the motion to supplement the record was not filed until
20   March 28, 2008 (Doc. 87). It was reasonable for Plaintiffs, during this period, to make
21   efforts to obtain the desired extra-record information, and their success at obtaining
22   information and subsequent move to supplement the record does not equate to obdurate
23   conduct. Moreover, although the motion to supplement "significantly undermine[d]
24   plaintiffs' claimed need for discovery," the court did not find that the motion for extra-record
25   discovery was mooted by the motion to supplement. See Protect Lake Pleasant IV (Doc. 97)
26   at 13-30. That Plaintiffs did not prevail on either motion does not mean that the motions
27   were filed in bad faith. Further, there was no finding that the motions were frivolous, and
28   neither LPMP nor the court invoked Federal Rule of Civil Procedure 11 with respect to these,

1  or any other, motions or arguments by Plaintiffs. See Scientific Weight Loss v. US Med.
2  Care Holdings, 2009 WL 2151365, at *4-5 (C.D. Cal. 2009) (during the proceedings, the
3  court determined that the plaintiffs' multiple preliminary-injunction motions were frivolous,
4  opined that their litigation tactics suggested an improper purpose, and sanctioned counsel
5  under Rule 11; for these reasons, the case was exceptional and fees were warranted under the
6  Lanham Act, which provides for an award of fees if the case is found to be
7  exceptional—groundless, vexatious, or pursued in bad faith).

8  The court finds that Plaintiffs' repeated arguments for extra-record evidence did not
9  amount to noncompliance of a court order, as suggested by Defendants. And for the same
10 reasons articulated above, the fact that Plaintiffs repeated unsuccessful arguments in an
11 attempt to introduce extra-record evidence does not support a bad-faith finding.

12 **5. Litigation**

13 Finally, the court notes that inadequate litigation by all the parties contributed to
14 making this case more complicated and burdensome. For example, in its May 21, 2007
15 Order on the preliminary injunction request, the court noted that "immaterial and excessive
16 remarks" by LPMP and BOR in their responsive pleadings regarding Plaintiffs' motivations
17 did nothing to illuminate the legal issues, and it specifically warned that LPMP "would do
18 well not to stretch its intervenor status and focus instead on the legal issues as it had
19 promised." Protect Lake Pleasant I (Doc. 40) at 7 n. 1. In addressing LPMP's law-of-the-
20 case-doctrine argument in their response to Plaintiffs' summary judgment motion, the court
21 found that LPMP's "lack of analysis is troublesome to say the least." Summ. J. Order (Doc.
22 176) at 22 & n. 11. The court went on to state that Plaintiffs also failed to analyze the same
23 issue in their reply, and that the lack of thorough analysis by both parties "made this court's
24 task unnecessarily arduous." Id. at 22. The court also found that all the parties had at times
25 "mischaracterized the evidence—either by selectively quoting from the record or by citing
26 to a part of the record which did not support their contention." Id. at 55 n. 23. These
27 instances were "too numerous to count" and were "not helpful in resolving the complex
28 issues raised in these motions." Id. And the court noted that the parties failed to comply

1   with the Local Rules of Civil Procedure governing objections to evidence and briefing
2   requirements for specific motions and, as a result, "the parties have unnecessarily multiplied
3   the filings in this action." Id. at 5 n. 7.

4   With respect to Plaintiffs' conduct, the court cannot find that it was sufficiently
5   egregious to constitute bad faith and make this an exceptional case that would warrant an
6   award of attorneys' fees. Absent a specific finding of bad faith, LPMP's request for fees
7   under the bad-faith exception to the American Rule must be denied.

8   **III.    EAJA**

9   The EAJA contains two attorneys' fees provisions. LPMP seeks fees under just one
10  of these provisions, 28 U.S.C. § 2412(b), which gives the court discretion to award
11  reasonable attorney's fees to the prevailing party in any civil action brought by or against the
12  United States "to the same extent that any other party would be liable under the common law
13  . . . ."[5] Thus, § 2412(b) incorporates the bad-faith exception to the American Rule so that the
14  exception is applicable in suits involving the federal government. See Rodriguez, 542 F.3d
15  at 709. The party moving for fees under this provision bears the burden to show that the
16  losing party acted in bad faith. Id. at 711. The same bad-faith standard articulated in
17  Fink—set forth above—is applied to determine whether fees are appropriate under § 2412(b)
18  of the EAJA. Id. at 709 (citing Fink, 239 F.3d 993-94). Therefore, to warrant fees under the
19  EAJA, the movant must demonstrate "reckless conduct [ ] 'combined with an additional
20  factor such as frivolousness, harassment, or an improper purpose.'" Fink, 239 F.3d at 994.

21  Because the court has already found that Plaintiffs did not act in bad faith under the
22  standard that is applied in the § 2412(b) analysis, attorneys' fees under the EAJA are
23  precluded, and the court need not address whether a non-governmental party may be awarded

---

25  [5]The other attorneys' fees provision, § 2412(d), provides for fees and expenses to be awarded
26  to a prevailing party, other than the United States, "unless the court finds that the position of the
    United States was substantially justified . . . ." 28 U.S.C. § 2412(d). Fees under § 2412(d) may
27  be awarded only to a party whose net worth does not exceed a specific amount, and attorneys'
    fees are limited to $125 per hour unless the court finds special factors justifying a higher fee. 28
28  U.S.C. § 2412(d)(2)(A) & (B). Fees under § 2412(b), based upon a finding of bad faith, may be
    awarded at the market rate. 28 U.S.C. §§ 2412(b), (c).

- 14 -

fees against another non-governmental party under the EAJA.

## IV.   CAA

### A.  42 U.S.C. § 7604(d)

LPMP's last argument is that it is entitled to fees under § 7604(d) of the CAA, which provides:

> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

The Supreme Court has analogized § 7604(d) to 42 U.S.C. § 1988, the statute that permits attorneys' fees in civil rights cases. See Pennsylvania v. Del. Valley Citizen's Council for Clean Air, 478 U.S. 546, 559-60 (1986). As mentioned in the bad-faith analysis above, the civil rights standard set forth in Christiansburg is applied to attorneys' fees provisions in environmental statutes, including the CAA. Marbled Murrelet, 182 F.2d at 1095. Thus, a prevailing defendant can recover fees under § 7604(d) when the court finds that the litigation was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, 434 U.S. at 422; Marbled Murrelet, 182 F.3d at 1095-96.

### B.   42 U.S.C. § 7604(a)

Before analyzing whether fees are available under the Christiansburg standard, the court must first address whether Plaintiffs' action was "brought pursuant to subsection (a)" of § 7604, which is referred to as the citizen-suit provision of the CAA. See 42 U.S.C. § 7604(d). A court may award attorneys' fees under § 7604(d) only if the underlying action was brought pursuant to the citizen-suit provision, i.e., § 7604(a). United States v. Stone Container Corp., 196 F.3d 1066, 1068 (9th Cir. 1999).

Plaintiffs assert that their claims were not brought under § 7604(a), and submit that the court has already held that their claims were instead brought pursuant to the APA. Pls.' Resp (Doc. 196) at 5 & n. 3. LPMP replies that the court held as much because LPMP successfully defended against Plaintiffs' CAA claim and demonstrated that conformity

determination claims could not be brought under § 7604(a). LPMP's Reply (Doc. 197) at 7. Each party claims that the "plain language" of § 7604(d) supports their respective view regarding whether fees are available under the CAA. Pls.' Resp (Doc. 196) at 5; LPMP's Reply (Doc. 197) at 7. However, neither party sufficiently analyzes the applicability of the citizen-suit provision to this case.

Section 7604(a) states:

(a) Authority to bring civil action; jurisdiction

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--

(1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

This provision confers jurisdiction on district courts "to enforce such an emission standard or limitation," which is specifically defined in the statute. 42 U.S.C. § 7604(a)(3).[6]

Under this citizen-suit provision, "any person may commence an action in the district court against the Administrator for failing to perform a nondiscretionary act or duty."

---

[6] Emission standard or limitation means (1) a schedule of compliance, emission limitation, or emission standard; (2) a prohibition respecting a motor vehicle fuel or fuel additive; (3) any condition or requirement of a permit under specific parts of the CAA or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs, or vapor recovery requirements; or (4) any other standard or limitation established under a permit issued pursuant to subchapter V or under any applicable State implementation plan (SIP) approved by the Administrator. 42 U.S.C. § 7604(f)(1-3).

- 16 -

Farmers Union Cent. Exchange, Inc. v. Thomas, 881 F.2d 757, 760 (9th Cir. 1989); 42 U.S.C. § 7604(a).  But only violations of "clear-cut" nondiscretionary duties give rise to jurisdiction under the citizen-suit provision.  See Farmers, 881 F.2d at 760, citing Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C.Cir. 1987) (§ 7604(a) permits "citizen enforcement of clear-cut violations by polluters or defaults by the Administrator") (quotations omitted); Mountain States Legal Found. v. Costle, 630 F.2d 754, 766 (10th Cir. 1980) (citizen suit jurisdiction proper only in action to enforce "specific nondiscretionary clear-cut requirements of the Clean Air Act"); see also McCarthy v. Thomas, 27 F.3d 1363, 1365 (9th Cir. 1994) (SIP or FIP (federal implementation plan) is enforceable in federal court through the CAA citizen suit provision, § 7604(a)).

The statute's narrow language serves to limit the number of suits that may be brought under the citizen-suit provision.  See Kennecott Copper Corp., Nevada Mines Div., McGill v. Costle, 572 F.2d 1349, 1353 (9th Cir. 1978) (CAA's citizen suit provision "must be read in light of the Congressional intent to use this phrase [non-discretionary duty] to limit the number of citizen suits which could be brought against the Administrator and to lessen the disruption of the Act's complex administrative process").  Consequently, the citizen-suit provision cannot be used as a vehicle to force government agencies to comply with their general obligations under the CAA.  See League to Save Lake Tahoe, Inc. v. Trounday, 598 F.2d 1164, 1167-70, 1173-74 (9th Cir. 1979).  Actions challenging whether government agencies complied with the CAA are governed by the APA judicial review provisions.  Sierra Club v. E.P.A., 346 F.3d 955, 961 (9th Cir. 2003); Environmental Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1023 (E.D. Cal. 2000) ("challenges to agency determinations falling under the general provisions of the [CAA] are properly analyzed under the APA rather than the citizen provision of the [CAA]").

In the final Summary Judgment Order, the court referred to the relevant claim as follows:

> Plaintiffs style Count Three of their FAC [First Amended Complaint] as a claim for "failure to conduct [a] conformity determination[.] FAC (Doc. 4) at 23.5 (emphasis omitted).  As part of their relief, plaintiffs are seeking a

> declaration that [BOR] "*violated* the *CAA* by approving construction of the proposed Scorpion Bay facility without conducting a conformity determination[.]" Id. at 27 ¶ 6:4-6 (emphasis added). Plaintiffs reframe this count in their summary judgment motion, claiming that the Final EA "violated NEPA" because it "considers only certain ozone and $PM_{10}$ emissions sources, and ignores motor vehicles altogether as a source of CO emissions." Pls.' Mot. (Doc. 150) at 23:7-9.

Summ. J. Order (Doc. 176) at 71-72. The Order specified that challenges to conformity determinations cannot be brought under § 7604(a). Id. at 72. The Order went on to state that Plaintiffs were not relying on § 7604(a) as a basis for Count Three; rather, their claims were governed by the APA. Id.; see Environmental Council, 184 F. Supp. 2d at 1023. Thus, as stated by Plaintiffs, the court has already determined that this action was not brought pursuant to § 7604(a).

LPMP nonetheless asserts that because "Plaintiffs' complaint alleged violations of the Clean Air Act on its face and [it] was forced to defend (and ultimately prevailed on) that claim," it is entitled to fees under § 7604(d). LPMP's Mem. (Doc. 190) at 6 n. 2. The court disagrees. The complaint did not allege violations of the CAA on its face. As indicated above, the complaint alleged a claim that is governed by the APA; namely, that the government agency did not comply with its obligations under the CAA. See FAC (Doc. 4) at 23; Environmental Council, 184 F. Supp. 2d at 1023. Nor did the complaint invoke jurisdiction under the CAA. Plaintiffs asserted jurisdiction under (1) 28 U.S.C. § 1331 (federal question); (2) 5 U.S.C. §§ 701-706 (the APA); and (3) 28 U.S.C. § 1361 (the mandamus statute). FAC (Doc. 4) at 2 ¶ 2.[7] Further, LPMP was found to have standing to intervene as a defendant in this action pursuant to the standard for suits brought under the APA. Protect Lake Pleasant v. Johnson, 2007 WL 1108916 (D. Ariz. April 13, 2007) (Doc. 24) at 7-8 ("standing to bring suit for judicial review of federal agency action under the Administrative Procedure Act, [ ], requires a showing that the interest to be vindicated is

---

[7] In the first Summary Judgment Order addressing the FPASA claims in Count I, the court determined that it had subject matter jurisdiction "under § 1331 'reinforced by' the APA, [ ], to consider whether BOR acted arbitrarily, capriciously and abused its discretion as the FAC alleges." Protect Lake Pleasant V (Doc. 142) at 14 (internal citation omitted).

1 arguably within the 'zone of interests' to be protected or regulated by the statute in question,"
2 and LPMP's economic interest qualifies as a legal interest within the zone of interests to be
3 regulated) (citing Cantrell v. City of Long Beach, 241 F.3d 674, 679 (9th Cir. 2001)).
4 Finally, in its response/cross-motion, LPMP correctly noted that Plaintiffs could not assert
5 a claim under the CAA, and it therefore proceeded to defend against Count III by analyzing
6 it under the default standard of the APA. LPMP's Resp./Mot. (Doc. 157) at 11-19.

Contrary to LPMP's contention, the fact that Plaintiffs' claim in Count III was defeated is not the "gravamen of the request for fees by a prevailing defendant" under the CAA. LPMP's Reply (Doc. 197) at 7. The initial requisite is whether Plaintiffs' claims fall within the purview of the citizen-suit provision, which they do not. The FAC did not seek to enforce an emission standard or limitation, did not allege violations of a SIP or FIP, and did not raise any other claims falling under the CAA's citizen-suit provision. Because Plaintiffs' claim was not brought pursuant to § 7604(a), the statutory requirement for eligibility for fees pursuant to § 7604(d) is not met, and LPMP's request for fees under the CAA must be denied. See Stone Container Corp., 196 F.3d at 1068.

## V.  Conclusion

The court concludes that LPMP is not entitled to attorneys' fees under the bad-faith exception to the American Rule, under the EAJA, or under the CAA. To the extent that the court may—pursuant to its inherent power and in its discretion—assess fees, the court finds that attorneys' fees are not warranted in this case. See Chambers, 501 U.S. at 45-46. Therefore, whether LPMP substantially contributed to BOR's defense or whether the requested fees are reasonable need not be addressed.

**IT IS ORDERED that** LPMP's Motion for Non-Taxable Expenses and Attorneys' Fees (Doc. 180) is **DENIED**.

DATED this 3rd day of January, 2011.

Robert C. Broomfield
Senior United States District Judge